Good morning, Your Honors. My name is Susan Horner. I represent the appellant, Dr. Rivkin. I would like to reserve four minutes for rebuttal. Also, the policy that I'll be referring to, there are a couple in the record. This one is in Volume 7. It's at Excerpt, pages 1804 to 1821. I have several points, specific points that I'd like to address. One involving the certain specific terms of the policy and its structure. Two are the summary judgment standards that were not followed by the district court. And three, the interpretation of the policy by a conflicted insurance claims fiduciary. I want to ask you a question. I think we've all looked at all of this, and it seems that there's possibly two ways that you can prevail. Either even if they get the deferential standard of abuse of discretion to say that the discretion was abused, or if you say that under Conklin, that there were just too many mistakes, that then it goes to de novo review, and that Dr. Rivkin's interpretation of the statute is the correct one. Correct? Well, even if under Conkright, they have the ability to change their position and come into court and for the very first time explain what they mean, and then go back to one of the prior positions that never was explained. Well, and that's what I want to ask you. Under the Conklin analysis, if Conklin obviously says one strike and you're out, that doesn't mean they lose the benefit of the standard. How many interpretations from your perspective do we have here? Well, we believe that there are three, because Dr. Rivkin repeated over and over and over to him what the first claims administrator told him, and that was Anna Christensen. The defendant argued, well, but there's no evidence she didn't make a note in the diary of that, so we have no evidence. There was no statement back, no declaration saying she didn't do that. And his consistency in all of his letters about that raised that issue. But even with Conkright, if you were to allow them to come in and give a new, quote, final interpretation, it's still wrong. They have modified the contract. They have altered terms. They have said, here's something that means this over here, the 20 percent is not income from earnings considered residual disability, but we do accept the fact now that he is residually disabled without an earnings floor. So it's illogical. So I still think even if there's not – Well, I understand you're saying that even if they get the abuse of discretion, they're wrong because the plain language says otherwise. Right. But if they don't get – if it goes to de novo, it's because their handling of their interpretations was incompetent under Conklin? If it was incompetent, I apologize, but I believe it's Conkright versus Frommert. Oh, I'm sorry. But that's okay. Yeah. We know what we're talking about. If they – I view Conkright as being a very unique case where there was an error in the plan design to begin with. There was a complete what do we do with returning employees and time value of money. It was completely left out of the plan. That was an error. To then read something in to take care of that so that the plan would not be completely washed out by too many benefits being paid just because somebody forgot to put a provision in the plan shouldn't apply to your standard run-of-the-mill insurance case where you've got a decision whether it be a contract interpretation or a disability interpretation and then allow an insurance company to come in and change – switch horses midstream. It would, as I stated in the briefs, would completely undermine what the Secretary's regulations are about. Let me ask the question because I know you want to get to what the policy really means, which I think is a central question in this case. But let me ask you a variant of what Judge Callahan asked you. The policy does provide that there's discretion in the administrator to interpret it. Do you agree with that? I agree that the words are in the end page. Does that – do we give less deference to that discretion when the interpretation has changed three times? In other words, we would normally – we would normally give some deference to the discretion of the administrator if the terms are ambiguous, and I understand that your argument is that they're not. But when the interpretation has changed three times, is there less deference to be given to the administrator? Well, I think the answer to that has to be yes. If you look at a case that was decided by this Court in September, that was after all the briefing was done, that was Steffen v. Unum Life at 697 Fed 3rd 917. The Court specifically addressed an issue about an income reduction. Now, it happened to be a very different income reduction than what we're dealing with here. But the Steffen Court applied the Saloma deference standard, and it's – Saloma said, and Steffen repeated it, that an administrator's decision will not be disturbed if reasonable unless it is illogical, implausible, or without support in inferences that may be drawn from the facts in the record. So let's get – let's go ahead. It also made clear – excuse me – that the reasonableness standard is viewed through a degree of skepticism. And I think that's where the lower deference comes in, because the degree of skepticism can vary in every case depending on the extent to which the decision appears to have been influenced by a conflict of interest. So let's go back to what I think is the major issue in this case, and maybe I'm wrong about that. Tell me why this clause – that's the central issue in this case – can only be read one way. Well, a couple of reasons that are interrelated. First, we all recognize that current monthly earnings is an official term of the contract. It's used 14 times throughout the contract. Any time the policy is referencing earnings from residual disability, the term current monthly earnings, which we have used the acronym CME, is applied, whether it be less than or equal to 20 percent of the earnings of the AME or over 20 percent. Nowhere in the list of nine is there a reference to current monthly earnings. And it's illogical – in fact, it's implausible that one would take a specific contract term that's used throughout the contract and suddenly reverse it – or not reverse it, but change it and just use a generic term, income, or not even list CME as one of the points of reductions. If the contract had intended to reduce the total monthly benefit in calculating a total disability benefit, then it would have used CME that is less than or equal to 20 percent. So that's one thing. The second thing is – Can I ask – just to interrupt you for a moment – something that you hadn't focused on too much, but I was concerned about was the header for the what are the other income reductions. It says they are – defines them as benefits you are eligible to receive from other sources due to your disability. You hit the nail on the head. That's exactly right. If you look at number eight by itself, all alone, then the use of the general term income in the context of this case when you're looking at whether or not current monthly earnings less than 20 percent are to be reduced, it would say that's not to be reduced because that income is from work considered residual disability. And so the number eight uses income in the negative. If it's income not from residual disability, then it could be. However, if you look at the general contract interpretation rule, if both a general and a specific provision apply to the subject, then the specific provision controls, and that's what you just pointed to. There is a specific term that details the subset of income that's encompassed in items one through nine, and that is what are the other income reductions. Other income reductions are benefits you are eligible to receive from other sources due to your disability. If you receive benefits from any other sources listed below, they will be used to reduce your monthly benefit. Current monthly earnings are work earnings from residual disability. And so my question is, you had noted that the, let's see, benefits you are eligible to receive from other sources due to your disability, and then in interpreting section eight you referred to sick pay, state disability insurance benefits, severance pay, vocational rehabilitation benefits. Would those be deemed income? I mean, do they actually give some meaning to number eight? Well, certainly, because they are benefits. And I think what number eight is, when you consider the introductory paragraph defining that subset of income, is you've got all these other items listed. And some of the items list, for instance, the Social Security, there's two lists. One is for family and one is for dependents. Workers' compensation, that sort of thing. There are certain ones that are uniformly listed in every policy. In a very rare policy, you may see something like veterans' benefits, which are a completely different kind of benefits. But I see number eight as being really the catchall, if you will, kind of like ERISA A3. It's the catchall. If we haven't named one of the benefits from another source that you get because of your disability, then it might fall within number eight. And certainly that --. So describe for me what would fall within number eight. Well, it would be any kind of a benefit. Let's look at the listed benefits on ER 18, 18 and 19. So we have any employer-sponsored group insurance, any workers' compensation or occupational. That's very typical. Any damages or settlement in lieu of workers' compensation. Okay. I'm focusing on number eight. Number eight says income from any work for pay or profit, not considered either partial or residual disability or real birthright employment. How would workers' compensation fall under that? Because workers' compensation would pay. It depends on the kind of benefit workers' compensation is paying. If they're paying lost wages because of disability and you've made your workers' compensation claim and you're paid a lump sum that includes past medical expenses, future medical expenses, temporary disability, total, if one of those portions of that workers' compensation includes benefits for loss of work, basically disability benefits, then that may fall under there. That is where number eight would become ambiguous is what of the other. And I don't --. Is this a different argument than you were making in your brief? No. I thought the argument you were making in your brief was that the final clause modified work rather than income. Well, actually, that's if you're taking number eight by itself. If you take number eight by itself, which is one of the things that the defendant was trying to argue, is the income, in fact, I can't remember exactly how they said it, but the income modifies another term, and we're going, I think they said it modifies residual disability. But anyway, income itself, whether it's being modified from one thing or another, it's specifically defined. And I know your time's running down, but now you've got me confused, which is easy to do. We have plenty of time, and we can reserve. I can give you additional time for rebuttal if the panel has additional questions. Let me just make up an example here. Let's assume that Dr. Rifkin went to work as an artist, not rehabilitative or disability employment. An occupation rather than a hobby. An occupation, and he made a million dollars selling his art. Would this clause apply? That was a question in my mind as to whether it would. It's a question in my mind, too, so see if you can answer it. Yeah. I think that it doesn't. If you look at the reply brief, we did itemize a number of types of income that would be benefits. Well, I understand, but you're talking about benefits, and it seems to me that when I first read this clause, I thought what it meant was, look, we've said you're partially disabled. If you actually go out and get a job and make a lot of money, that'll reduce your benefits. Not the total disability benefit. It will reduce the, if you make more than 20% of your predisability earnings, your average monthly earnings, then once you exceed that 20% mark, you first calculate the total disability benefit. There is no offset there. And then, lo and behold, you go over to, you now are entitled to receive a residual disability benefit because the residual disability benefit definition, let me give you the page number on that, at 1815 and 1816, the requirements to qualify for a residual disability benefit, that's where if you earn more than 20% of your AME, you qualify to receive a residual disability benefit. That benefit is calculated by first calculating the total disability benefit and then subtracting from it 50% of your CME. So going back to Judge Hurwitz's example that Dr. Rivkin suddenly becomes this artist, I guess I don't understand how that could be income, and he earns a million dollars from selling a painting, but how is that income that he was eligible to receive due to your disability, which seems to be the limitation? It's not. If you look at the definition of what the income subset is through one through nine, then it's not because it's not benefits you're eligible to receive from another source. But if you look at number eight isolated and kind of ignore that beginning, then it may be ambiguous. Well, how can you? Because it's the beginning that says they will be used to reduce your monthly benefit. If you just look at number eight without looking at the intro, what are the other income reductions, then we don't know what to do with this information. Correct. So exactly what is your answer about the million dollars as an artist looking at that section? It doesn't apply. Because it's not a benefit he was eligible to receive due to his disability. Correct. And, again, I'm still having some difficulty figuring out what falls in this category in number eight. You said you'd have to look at a workers' comp award or a damages award. Oh, no, no, no. No, I was using the workers' comp is listed. Right. So my question, I guess, and I know I'm keeping you over time with Judge Kelley. It's fine. No, it's fine. So tell me what, give me an example of something that would fall within number eight. Many times an employer will voluntarily offer a salary continuation pay or something that is not necessarily an official plan, but they, almost like a payroll practice, which is exempt from ERISA, but it is a benefit that the employee receives. During the receipt of total disability benefits, if that salary continuation plan were to pay in addition to the LTV, then that would probably be subtracted because it's a benefit received as a result of the pre-disability work. You're entitled to receive it because you've become disabled. Thank you. Severance pay for a voluntary termination once you've become disabled, that may be another one. Thank you. All right, thank you. If we have additional questions, I'll give you time for rebuttal. I'll check with my panel after. Thank you. Good morning, Your Honors. Michael Bernacchi for Union Central Life Insurance Company. I want to start off by clarifying that there were only two interpretations that were given during the claim. We either took 50 percent or we took 100 percent. We originally told Dr. Rifkin we were going to take 100 percent, and that's what we did. If you're counting two, you're not talking about Christians? No. He was not even receiving offsets at that time. It was a total disability time period. There's no record in the file of any representative telling that except Dr. Rifkin saying so, but in any event. But why would he be writing those letters, reference her, and talking about it at length? I mean, that's a logical way to look at it. And I understand that, but I think the other issue on that one is that at the time this was being done, there was no offsets being taken. He was receiving a total disability benefit. And then there was the return to work incentive for one year where there was no offsets being taken again. So the time he claims this was said, it wasn't even an issue. What I want the court to understand is that we only took two offsets. We took 100 percent of the earnings below 20 percent, and we took 50 percent. And we originally told them. Okay, two positions, but did you take one of the positions more than one time? Well, here's what we basically did. We originally both told Dr. Rifkin that we were going to take 100 percent. He clearly understood that. He called us up and said, why should I work if you're going to take 100 percent? Then there was a new claims examiner. And on top of that, you basically had Dr. Rifkin was switching employers. His income was varying from month to month, basically. And that new claims examiner consistently took a 50 percent offset approach at that point in time. But the important thing is this is what Concrete is all about. This was an honest mistake. All right, but then did you take the 100 percent again? No. No, it was first Wolfe, we first took 100 percent, and then it was 50 percent continuously. We should have been taking the 100 percent, but we consistently took the 50 percent offset. If we believe that Christensen did take a position, if we believe that that letter was written in response, what's the? I think it's, to be honest, I think it's insignificant. Anybody can call somebody up at the beginning of a claim and say, you know, here's a 50-page policy. Tell me what every provision is going to mean in every situation. It's what the company actually does when they're faced with the situation, and I think that's what's important, especially when you don't have any documentation. This is really a mirror image of Concrete. We don't lose discretion. But I want to get to the key issue that you've raised about who's right and who's wrong with respect to the policy interpretation, because there's really only one correct interpretation, and I want to make sure that I articulate it. The simple fact is the way you understand how these offset provisions work is by understanding how the disability benefits are calculated under the terms of the policy. And in that regard, I want to make three key points. First, other income reduction number eight applies to offset of income for the total disability calculation. Can we go to the language of the plan? Because I was confused, or at least it seemed that the section that says, what are the other income reductions, then defines them as benefits you are eligible to receive from other sources due to your disability. And it didn't seem that the income that he received from working as a doctor was income he was eligible to receive due to his disability. So it didn't seem to me that the section eight fell within that category. Can you explain why that's wrong? Yeah, I'm sorry, because he is out on disability. He's not able to work in his own occupation first full time. So any benefits that he's getting that would be generally considered offsets, or any benefits that he's getting from income, not from his actual occupation, are considered offsets. So his work that he does as a doctor, but which he can only do part time, you're saying that work that he's working as a doctor is due to his disability? Yeah, well it's due to his disability because the only reason he's doing it is because he can't work full time in his occupation. That's why it's due to his disability. I guess Dr. Good and I are both to say, that's a strange interpretation of the phrase due to your disability. And when you look at number eight, if you read it the way your opponent wants to read it, it makes some sense because work considered partial or residual disability or rehabilitative employment is work you're doing because of your disability. And I think once again to understand this you have to understand how the disability benefits are calculated under the terms of the plan. And what I was going to say is offset number eight basically applies to the total disability calculation. But I don't think we want to understand how disabilities are supposed to work. I mean we have to interpret the contract. So we have to refer to specific language of the contract. And I'm going to. If I can make the points because I do believe I'm right here. I just need to. Offset number eight refers to the calculation for the total disability benefit. Because residual disability, I know you wanted to define it as income, but the actual definition of it only refers to work. It doesn't refer to income at all. It says performing each of the material duties of your own occupation. No, and I understand. I guess what I'm saying is you have offset number eight refers to the total disability calculation. As do all the offsets. Well, yeah, exactly. As do all the offsets. Then the other thing that's important to understand is there is a residual disability benefit, a partial disability benefit, and a rehabilitative disability benefit. Each of those provisions have their own income offset provisions. That's what's important. The second thing you have to, or the third thing you have to understand, and this is important as well, is you cannot calculate a partial disability benefit, a residual disability benefit, or a rehabilitative employment benefit without first calculating the total disability benefit. That's what the policy requires. So let me use Dr. Rifkin's claim to give you an example of what I'm talking about. Dr. Rifkin essentially had two types of disability coverage. He had total disability and residual disability. Total disability is defined under the terms of the plan that you're either not working or you're working and earning 20% or less of your predisability income. Residual disability is defined under the plan as working and earning between 20% and 80% of your predisability income. The key to understanding is how you calculate these benefits. You calculate the total. When you get a claim and you don't know whether it's going to be residual or total until you know what income he's making. So if Dr. Rifkin submits a claim and it's below 20%, it's a total disability benefit. You therefore calculate it under the total disability standard. You do a 40% of, you multiply 40% of his predisability income, and you reduce all those other income reductions. I'm waiting for you to read my specific language. But the residual disability basic benefit, what you do is you figure it's between 20% and 80%. You calculate the total disability benefit. You're not going to apply offset number eight to the first part of the calculation because the income is from residual disability. That gets taken care of in the residual disability income offset section, which is the 50% offset section. That's why that plan is there. And let me add something else, and it gives meaning to that term, which you guys have been searching for. The other point, and this is what was persuasive to the district court, is that plaintiff really can't provide a reason why that offset number eight is in the policy. The simple fact is residual disability is so broadly defined it covers everything. But more importantly, if you were to omit offset number eight, it would give plaintiff everything that they wanted. You wouldn't do any kind of income deductions for total disability, yet you would still have the 50% offset provision for residual disability. Unfortunately, offset number eight is in the plan, and it has to be given meaning. Well, let's go back to just, and I take Judge Okuda's point about the heading here, but let's just go back to the language of number eight. Okay. Your position is that the final phrase modifies what? Income. Isn't that a strange reading? No. I mean, you do agree that your client wrote the policy. Yes, yes. Why wouldn't you have said, why wouldn't it have been said differently if that's what it meant? Well, again, this is concrete, basically. And I think concrete, you know, one of the nice things that the Supreme Court did in concrete, besides saying a mistake doesn't divest you of discretion, is it came out and it basically stated that, look, ERISA plans can be complex. Sometimes people make mistakes. You can always say somebody could have made it a little bit better or a little bit easier, basically. But just the simple fact that it could have been more simple. Yeah, but here we're dealing with language in a contract. And the first question is, what does it mean? It doesn't save you on plain language arguments. What's that? Concrete doesn't save you on plain language arguments. Well, I mean. It doesn't say. If the plain language says one thing, concrete doesn't say you can say it says something else because you meant to do it otherwise. It acknowledges, though, that plans can be complex. And when you have a plan that's 30 or 35 pages, basically. And the other thing about this plan, you have to understand, is it was issued from a multiple employer trust, and it's trying to provide people with cafeteria coverage. And I take your point that it's a complex plan. I guess my question is, tell me how I can reasonably read this one sentence and say to myself that the final clause modifies income when it talks about either partial or residual disability or rehabilitative employment. Well, I think. And that's the point I'm making. Doesn't it modify work? And I think there's case law that we cited in the brief, basically, which is you have. And that's my point, is once you understand how disability benefits are calculated under the plan, this is the only interpretation you can arrive at. Their interpretation doesn't make any sense. Our interpretation does. Why don't the defined terms, though. I mean, generally in these sorts of insurance contracts, we look at the defined terms. And the defined terms, you know, partial disability, residual disability, and rehabilitative employment don't include the word income or have anything to do with income in those defined terms. I find that a little bit troubling also. No. And I understand that, Your Honor. It is not in the defined terms. But it's also when you're looking at this interpretation, it's more than just looking at the specific offset number eight and saying there's not a defined term that can help us explain it. Therefore, plaintiff wins. That's not how it works, basically. Plaintiff has to come up with a logical interpretation that not only explains the actual term, but why the term is in the plan. And in this particular case, plaintiff can't do it. Again, if the offset was never included, if offset number eight is never included, it gives Dr. Rifkin everything he wanted. We wouldn't be deducting any income while he's out on total disability. We would only be deducting income while he's residually disabled. We have deference as a person. That's what the plan provides. And it certainly seems a logical interpretation. I mean, the offset eight by its terms is limited. All of those offsets are limited to income due to your disability. And then you have the, as some of your, as at least one interpretation allegedly had, that's sort of the interpretation of the contract. One of your employees apparently agreed with that. Well, I'm not willing to agree with that. The simple fact is that we've taken two types of offsets, either 50% or 100%, basically. I find it hard to believe that an employee is going to talk about certain offsets at the very beginning of the claim. But even the simple fact is, once again, there is no explanation for offset number eight if you agree with Dr. Rifkin's interpretation. Well, what do you say about the interpretation that has to do with severance pay? Well, that's actually interesting. Does that not work? It seemed a little bit questionable. She said salary continuation. If you look at offset number nine, it specifically delineates salary continuation. So why would you have it double, basically? The simple fact is they went out of their way to specifically identify probably 15 different specific offsets they wanted to take out, basically. Is it your position that this really doesn't belong under this heading? In terms of? Yeah, because under your reading, it's not income that he's getting due to his disability, is it? It is income. Well, I mean, it is income. He's getting less. So Dr. Rifkin, let's assume he goes back to doing exactly what he was doing before. Exactly. Which is some sort of medical stuff. I've forgotten what. But he can't do it full time. Yes. He doesn't. He makes 25 percent of what he made before, some number. Yes. And you're saying he's getting that income due to his disability? Well, it is, because he's only working. He's working part time because of his disability. Why didn't it say reduced income that you get because of your disability? It says benefits that you get due to your disability. By the way, when you rewrite the contract, it should be because of. Yeah, well, that's fine. And I understand that. But, once again, under an abuse of discretion standard of review, simply because the terms could have been better. I mean, if that's the. I guess the question that I'm asking and I think others have been asking is, not only could it have been better, but is there any other way to read the language due to your disability except income you got because you were disabled as opposed to. As opposed to the way you're reading it, which is income. Despite the fact that you were disabled. No, the reason. The important thing to remember is that the policy here pays total disability benefits if you're working and earning less than 20%, or residual disability benefits if you're working and earning between 20% and 80%. The reason you're not able to work full time in your occupation is due to your disability. That's why the language is in there, basically. And, again, what's important to understand is this offset provision in number eight doesn't want to conflict with the more specific offset provisions in residual disability and rehabilitative employment. Again, there's a 50% offset provision for residual disability. What's important to understand is the calculation for residual disability is a two-step process. First, you have to get the total disability and apply all these offsets on page eight. Then you take the 50% reduction in income. If, basically, this offset had just simply said income from any work for pay or profit, period, it would make the residual disability illusory because you would take out all of the income they've earned while out on disability before you even get to the 50% offset provision. So that is why that term is in there. So is it ambiguous, at least? I think it's – well, you define ambiguity in terms of if you don't look at the – All right, if we look at it and say it can only say one thing, then we're going to say what the plain language says. But you're saying it's ambiguous, at least, and it couldn't mean what it sounds like it means because you have to read everything in its full context. And that's, I guess, my point. So I guess it's got to be ambiguous from your perspective. Well, what I'm basically saying is we have discretion. We're the administrator. There's no doubt about it. This is concrete, basically. Ours is not only a reasonable interpretation. I think you can look at it two ways. But the important thing is if you look at it in the overall context of how disability benefits are calculated, the policy as a whole, there's really only one correct interpretation. There's only one reason why this offset is in here. So you combine that with the fact that – Well, I just heard two things. You said ours is a reasonable interpretation. Then you're saying ours is the only right one. Well, I'm thinking – Even though it wasn't the only one you made. I think it's a reasonable interpretation in terms of if you're looking at the offset provision in isolation. But I think when you start looking at the policy as a whole, it's the only interpretation you can arrive at. Plaintiff cannot provide a reason why that provision is in the contract. If that provision is taken out of the contract, it gives Dr. Rifkin everything he seeks. And that's very telling, basically. All right. Do we have any additional questions? All right. Thank you for your argument. Does the panel – you've used all your time. But if the panel has additional questions – I do have one question. All right. You can come up and answer it. And I'll say in advance, it probably evidences my continued confusion about this policy. But explain to me, in your view, what happens under the policy if Dr. Rifkin is able to go back to his former employment and earn 100 percent of what he earned before? Oh, well, he's not disabled anymore. But how does the insurance company make that determination? Does it do so by applying one of these exceptions, or does it just reevaluate his ability? In other words, as I understood your opponent, I think he was saying the way we do that, of course, is we look at – wholly aside from evaluating him, if he happens to go out and earn more than 20 percent of his previous income in the profession, we then move him back to partial. If it's 100 percent, he gets moved back to – in effect, to zero. I apologize for the candidness, but I found that argument circular and spinny. Well, I understand. I'm not asking you about the other side's argument. I'm asking you, what happens? Does this apply? And don't make it 100 percent. He goes back to his previous job and makes 75 percent of his income. I need to direct you to the definition of residual disability at 1815. And I understand. You say that doesn't apply because that's not income that's derived from partial or residual disability or rehabilitative employment, right? No, no, no. Unless I've misunderstood you, the residual – the definition of residual disability does not have a 20 percent earnings floor like the defendant is reading in. If you are working either in your own occupation or another occupation, part-time or full-time, you are considered residually disabled. If you earn more than 80 percent of your pre-disability earnings, then you are – the benefits are terminated. Okay. That's what I was seeking. So you're saying that this income wouldn't be considered under income reduction 8, but would rather on the residual side reduce your benefits or make you unable to get – Any income from his work while he's residually disabled, which is any occupational work, whether part-time or full-time, as long as it's under 80 percent, you're residually disabled and it's income from work considered residual disability. But the distinction is what kind of benefit you receive. And the policy says in two places, if your earnings from your residual disability work are less than 20 percent, you receive a total disability benefit, and then you go to the end of the policy at pages 8 and 9 on how to calculate it. And if you earn more than 20 percent, you receive a residual disability benefit. And on that one, the instructions say go to the end and first calculate a total disability benefit and then subtract half. Okay. So that to do – I'm trying to deal with your opponent's argument here. So if your client were to work more than 20 percent, as a doctor there would be consequences to his disability pay. If he worked and earned more than – Earnings. That's okay. What if he worked more than 20 percent? Let's say he earns 40 percent. Okay, he's over the 20 percent mark. He's nevertheless still residually disabled, whether he earns 10 percent or 40 percent. No, I understand that. Okay. I understand the doctor. Now change it. He works full-time instead as a – what's a learned profession? How about a lawyer? He works 100 percent of the time as a lawyer and makes twice as much as he made before. He does utilization review. He was an internist. No, I know what he does. I'm asking a different question. He switches professions, makes a lot of money in another profession. How does number 8 apply in your view? Number 8, well, when you say apply, number – Let me just ask it a different way. If he earns more than what he was making before the disability, but in a different profession, is he then kicked out? He doesn't get any disability payments at all? Correct. And why is that? Because under termination of insurance, which – It's another provision that deals with it is what you're saying. Yes. Where did it go? Page 1821. And that happens if the date – Your current monthly earnings exceed 80 percent of your indexed average monthly earnings. Thank you. That's what I was looking for. Thank you. I apologize for wandering around towards it. But I think that the problem here is that the defendant wants to interrelate and interread residual disability with residual disability benefit. Residual disability doesn't require any earnings floor. Residual disability benefit, you don't get paid that until your earnings exceed 20 percent. Total disability is not working at all, but you can receive a total disability benefit either if you're not working at all or if you're earning less than 20 percent. And no matter what, when you calculate a residual disability benefit, you first have to calculate a total disability benefit and then subtract from that 50 percent of your earnings if you earn more than 20 percent. Thank you. All right. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, Ikuta, Hurwitz